***********
The undersigned have reviewed the prior Opinions and Awards based upon the record of the proceedings before Deputy Commissioner DeLuca and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner DeLuca with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and the subject matter. *Page 2 
2. All parties have been correctly designated, and there is no question as to misjoinder or non-joinder of parties.
3. This case is subject to the North Carolina Worker's Compensation Act.
4. An employment relationship existed between plaintiff and defendant-employer Sunbridge Nursing Center and AIG was the Insurer on the risk on the alleged date of injuries on December 16, 2004 and on or about October 11, 2005.
5. Plaintiff suffered a compensable injury by accident on or about December 16, 2004 for which medical treatment was provided by defendants.
6. Plaintiff alleges that she suffered a compensable injury by accident, occupational disease or substantial change of condition on or about October 11, 2005, liability for which has been denied.
7. Stipulated documents include the pretrial agreement, Industrial Commission forms, medical records, employment records, and discovery responses.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born on February 23, 1956. She was almost 51 years old at the time of the evidentiary hearing. Plaintiff is a licensed practical nurse ("LPN"), and had been licensed since 1980. Plaintiff worked at a facility, now known as Sunbridge for Lexington, for over 20 years, from 1982 until December 26, 2005.
2. Plaintiff's job involved patient care. The patient care required bending, stooping, walking, and standing frequently. Plaintiff's job required that she lift and position patients on a *Page 3 
daily basis, often numerous times a day. The facility was often short-staffed, which required the nursing staff to work longer hours and conduct patient care, including lifting and positioning, without assistance.
3. Plaintiff has a long history of low back problems. In the early 1980s, while plaintiff was in her 20s, she had back surgery for removal of a disc and nerve repair because of pain in her lower back. She was working for a different employer, but her injury was not work related and there was no known accident.
4. Beginning in the mid-1990s and continuing through 2005, plaintiff was periodically written out of work because of flare-ups of back pain. She was prescribed muscle relaxers and treated conservatively.
5. On February 6, 2003, plaintiff presented to Lexington Memorial Hospital for a lumbar CT scan. The CT scan showed degenerative changes to the lumbar spine, generalized bulging of the discs at all levels, and worsening disc space narrowing at the L5-S1 level.
6. On March 6, 2003, plaintiff presented to Dr. Scott Stewart at Johnson Neurological Clinic. Plaintiff complained of right leg pain greater than left leg pain, greater than low back pain. Dr. Stewart recommended a prednisone dosepak, L5-S1 epidural steroid injection and a MRI of the lumbar spine with and without contrast.
7. On March 14, 2003, plaintiff had an MRI which was reported to show spondylosis with a small left paracentral disc protrusion at L3-4 which did not appear to significantly compress the thecal sac, a central disc protrusion at L4-5 causing mild compression of the thecal sac, and mild disc bulging and bony spurring at L5-S1 which did not appear to cause significant compression of the thecal sac. *Page 4 
8. On March 21, 2003, Dr. Stewart treated plaintiff with a lumbar epidural steroid injection under fluoroscopy. On April 3, 2003, plaintiff reported to Dr. Stewart that the injection was of no benefit.
9. Plaintiff returned to work on or about April 5, 2003. Despite the treatment of back pain prior to December 2004, plaintiff was able to work without difficulty in a heavy job without diminution of her earning capacity from April 2003 to December 2004.
10. On or about December 16, 2004, plaintiff had a specific traumatic incident to her back. On this date she was bent down treating the legs of a patient in a wheelchair when she felt a pull and sharp pain in her lower back. She reported the injury to Marcia Dach and an incident report was completed. She was referred to Johnson Neurological. Defendants accepted this claim as a compensable injury by accident.
11. Plaintiff presented to Johnson Neurological on December 21, 2004, where she was examined by Crystal Sowder Rose, a physician's assistant. Ms. Sowder Rose was under the direct supervision of Dr. Gregory Mieden, a board certified neurologist, at all times during her treatment of plaintiff. As supervising physician, Dr. Mieden examined plaintiff and reviewed and approved the treatment recommendations made by Ms. Sowder Rose.
12. Ms. Sowder Rose examined plaintiff and found reproduction of some paresthesias on the L4-5 distribution, left greater than right, positive straight leg raise bilaterally, left greater than right, abnormal deep tendon reflexes, and antalgic gait favoring the right. Ms. Sowder Rose recommended Flexeril, Vicodin, and a prednisone dosepak, Naproxen or ibuprofen and physical therapy evaluation and treatment. Plaintiff was written out of work. Dr. Mieden agreed with these recommendations. *Page 5 
13. On December 28, 2004, Ms. Sowder Rose continued the recommendation for plaintiff to remain out of work until follow up on January 4, 2005. On that date, plaintiff reported doing well with only occasional left side pain down to her knee. Ms. Sowder Rose released plaintiff to return to work without restrictions, to be seen as needed.
14. At the evidentiary hearing, plaintiff testified that sometime in October 2005, around October 11, she was called to a room to assist a CNA with a patient. The patient was in the wheelchair and had slipped to where the safety belt was around his chest. She and the CNA picked him up to put him in the wheelchair, but the CNA did not lift her share of the weight, and plaintiff felt a pop in her back.
15. Plaintiff testified that she reported the incident to Brandy Justice, who plaintiff understood was the assistant Director of Nursing at the time, and Penny Franks, both of whom were working on the shift with her.
16. Plaintiff did not file a formal report initially because she did not complain about every incident that happened at work, as the staff does not typically fill out a report for every ache and pain, and sometimes she felt pain that might later get better. She also explained that sometimes the facility is too busy to stop and do such paperwork every time someone had pain.
17. Plaintiff further testified that her pain was different in October 2005 than before. It was constant shooting pain down the right leg and in her lower back.
18. As of the time of this incident, it was the defendant's policy that employees make written report of injuries within 24 hours. Plaintiff did not comply with this policy.
19. Wanda Martin, a co-worker, testified that she was not aware of plaintiff's alleged claim of injury in October 2005, but observed that plaintiff suffered from back pain and related problems two to three months prior to October 2005. *Page 6 
20. Plaintiff presented to the office of her family physician on November 2, 2005 but saw another physician in that office, Dr. Farrah. Dr. Farrah examined plaintiff and recommended plaintiff take Vicodin, Flexeril, and a medrol dose pack. Dr. Farrah also referred plaintiff to Johnson Neurological.
21. On November 22, 2005, plaintiff presented to Johnson Neurological and was seen by Ms. Sowder Rose. She complained of having done fairly well since the last visit until over the past month. She did not report any specific incident to the physicians' assistant. Ms. Sowder Rose recommended an MRI, physical therapy, Vicodin, Ambien and Flexeril. She also assigned light duty restrictions.
22. The MRI was performed on November 29, 2005 at Lexington Memorial Hospital, and was reported to show disc protrusions at L3-4 and L4-5. Dr. Mieden noted the results on this MRI to reflect more damage in the disc problems between the third and fourth discs and the fourth and fifth discs.
23. On December 13, 2005, Dr. Mieden attempted to perform a lumbar epidural steroid injection but could not access the disc space. Plaintiff was written out of work on December 30, 2005.
24. On December 28, 2005, plaintiff and her husband met with the Administrator for Sunbridge to find out why the medical treatment was not being provided under workers' compensation coverage. At this time, an incident report was prepared by the Director of Nursing, Kim Burroughs. Plaintiff did not recall the specific date of the injury and informed Ms. Burroughs and wrote question marks around the date of "October 11-20, 2005". She wrote the incident occurred lifting a patient. *Page 7 
25. Plaintiff's testimony concerning her alleged injury of October 2005 is credible. She worked for the employer for more than 20 years. Her performance evaluations in the employment records gave her good reviews. Plaintiff's testimony is specific as to details sufficient to lend credence to her descriptions of events. Her reasons for forgetting the details previously are understandable. She was dealing with her own back pain, her disability, her husband's terminal illness and taking pain medications. She also explained that she depended greatly on her husband to take care of things for her, including assisting her with her communications with her physicians and her employer, and he was not well at the time of the injury in October 2005.
26. Dr. Mieden referred plaintiff to Dr. William Spillane, an interventional pain management physician. He performed an epidural steroid injection at L3-L4 on January 17, 2006. He suggested other treatment options of caudal epidural steroids, medial brach blocks or possible radio frequency lesioning in the future.
27. In a follow up evaluation on January 27, 2006, plaintiff reported her back and leg pain doing 50% better. She was written out of work by the physician.
28. On January 30, 2006, Dr. Spillane discussed treatment options with plaintiff for the continued complaints of bilateral lower extremity pain and left lower extremity numbness. The options included medical management and continued epidural steroid injections or a spinal cord stimulator trial. She opted to proceed with another injection. The doctor arranged to do an epidural L4-5, refill her medications for a three months supply and recommended that she stay out of work until further notice.
29. Plaintiff was terminated from her employment with Sunbridge on March 29, 2006. She saw Dr. Spillane on March 30, 2006. Dr. Spillane cleared her to return to work in *Page 8 
four weeks with restrictions of no lifting over 25 pounds, avoiding frequent bending and stooping, and frequent positional changes as necessary.
30. Plaintiff began treating with Dr. Heather Fullerton, a board certified physiatrist, at Regional Rehabilitation and Pain Associates on December 27, 2006.
31. Dr. Fullerton diagnosed plaintiff with both myofascial pain and disk/radicular pain. At the initial visit, Dr. Fullerton prescribed physical therapy and Methadone for long acting pain relief.
32. Plaintiff continues to treat with Dr. Fullerton for medication management. She could not afford physical therapy treatment. The methadone helped the pain but caused nausea. Dr. Fullerton has prescribed other medications for plaintiff in attempts to assist her with pain relief, including Norco, Duragesic patches, Fentanyl, Robaxin, Hydrocodone, and Lidoderm patches.
33. Plaintiff is not at maximum medical improvement. Dr. Fullerton has not assigned physical restrictions and has kept plaintiff out of work.
34. Dr. David Dupuy performed a record review of plaintiff's medical treatment. He opined that plaintiff's pre-existing condition was not aggravated by a work incident in October, 2005.
35. In their depositions, Dr. Fullerton and Dr. Mieden opined to a reasonable degree of medical certainty that the incident which occurred on or about October 11, 2005 aggravated plaintiff's pre-existing condition. Greater weight is given to the opinions of Drs. Fullerton and Mieden over Dr. Dupuy as Dr. Dupuy did not treat plaintiff and only reviewed her medical records. *Page 9 
36. Dr. Fullerton opined that plaintiff was at a medium risk of developing back pain as a nurse, given her pre-existing back condition, and that plaintiff's position as a nurse aggravated her pre-existing back condition.
37. Dr. Mieden opined that plaintiff's job as a nurse probably exacerbated or contributed to plaintiff's degenerative disc disease and that those in the nursing profession are at an increased risk of developing low back pain and exacerbating a pre-existing degenerative disc disease.
38. Neither Dr. Fullerton nor Dr. Mieden opined to a reasonable degree of medical certainty, and plaintiff has failed to show through competent evidence, that plaintiff's job placed her at an increased risk over the general public of developing degenerative disc disease.
39. Plaintiff's average weekly wage is $1,054.98, which yields a compensation rate of $703.35.
40. Defendants' defense of this claim was not stubborn and did not constitute unfounded litigiousness.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered a compensable injury by accident on or about December 16, 2004. N.C. Gen. Stat. § 97-2(6). Plaintiff suffered a compensable injury to her back, which arose out of and in the course and scope of her employment, by specific traumatic incident occurring on or about October 11, 2005. N.C. Gen. Stat. § 97-2(6). *Page 10 
2. Plaintiff has not shown that she suffers from an occupation disease pursuant to N.C. Gen. Stat. § 97-53(13).
3. N.C. Gen. Stat. § 97-22 provides that an injured employee shall give the employer written notice of the accident. Compensation to an injured employee is not payable unless the employee provides the written notice within 30 days after the occurrence of the accident, unless reasonable excuse is made to the satisfaction of the Industrial Commission for not giving such notice and the Commission is satisfied the employer has not been prejudiced thereby. N.C. Gen. Stat. § 97-22. An employer is not prejudiced by a plaintiff's failure to provide written notice of an injury within 30 days when defendant had actual notice of plaintiff's injury. Sanders v. Broyhill FurnitureIndustries, 131 N.C. App. 383, 507 S.E.2d 568 (1998). In the case at hand, plaintiff reported the injury to whom she believed was the assistant Director of Nursing. Furthermore, defendant has not shown that it has been prejudiced by plaintiff's failure to provide written notice within 30 days after the occurrence of the accident.
4. Plaintiff has been disabled as a result of this compensable injury from December 28, 2005 to the present and continuing. N.C. Gen. Stat § 97-29. Russell v. Lowes Product Distribution, 108 N.C. App. 762,425 S.E.2d 454 (1993). Plaintiff is entitled to receive temporary total disability benefits of $703.35 per week from December 30, 2005 to the present and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
5. Defendants are required to provide plaintiff with reasonably necessary medical treatment related to her compensable October 2005 back injury that tends to effect a cure, provide relief, or lessen the period of disability. N.C. Gen Stat. §§ 97-25, 97-25.1. *Page 11 
6. As plaintiff has not reached maximum medical improvement and has not been assigned physical restrictions, vocational rehabilitation would be inappropriate at this time. N.C. Gen Stat. §§ 97-25, 97-2(19).
7. Defendants have not defended the matter without reasonable grounds. N.C. Gen Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee approved below, defendants shall pay to plaintiff temporary total disability compensation in the amount of $703.35 per week from December 30, 2005 and continuing until further order of the Commission.
2. Defendants shall pay all medical expenses incurred or to be incurred resulting from plaintiff's compensable October 2005 back injury so long as it tends to effect a cure, provide relief, or lessen the period of disability.
3. A reasonable attorney fee of 25% of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid as follows: 25% of the lump sum due plaintiff under paragraph 1 of this Award shall be deducted from that sum and paid directly to plaintiff's counsel and thereafter every fourth check shall be paid directly to plaintiff's counsel.
4. Defendants shall pay the costs.
 This the 6th day of August, 2008. *Page 12 
S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1